Andrea L. Calvaruso
Ana Y. Correa
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BON-TON STORES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ATTACHMATE CORPORATION and MICRO FOCUS (US), INC. <br><br> Defendant. | Case No.: <br><br><br> **COMPLAINT** <br><br><br> JURY TRIAL DEMANDED |

Plaintiff The Bon-Ton Stores, Inc. ("Bon-Ton"), by and through its attorneys, Kelley Drye & Warren LLP, alleges:

### NATURE OF THE ACTION

1. This is a civil action arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for a declaration that Bon-Ton has not infringed any valid copyright of Attachmate Corporation ("Attachmate") or Micro Focus (US), Inc. ("Micro Focus") and has not breached any contract between Bon-Ton and Attachmate or between Bon-Ton and Micro Focus.

### PARTIES

2. Bon-Ton is a Pennsylvania corporation with its principal place of business located at 2081 East Market Street, York, Pennsylvania 17402.

3. Upon information and belief, Defendant Attachmate is a corporation organized under the laws of the State of Washington, with its principal place of business located at 705 5th Avenue South, Suite 1100, Seattle, WA, 98104. Attachmate is in the business of licensing various software products.

4. Upon information and belief, Defendant Micro Focus is a corporation organized under the laws of the State of Delaware with its principal place of business located at 700 King Farm Blvd. Suite 400, Rockville, Maryland 20850. Micro Focus is in the business of licensing various software products.

## JURISDICTION AND VENUE

5. By this action, Bon-Ton seeks a declaratory judgment that: (a) Bon-Ton has not breached any contract between Bon-Ton and Attachmate; (b) Bon-Ton has not infringed any valid copyright of Attachmate; (c) Bon-Ton has not breached any contract between Bon-Ton and MicroFocus; and (d) Bon-Ton has not infringed any valid copyright of Micro Focus.

6. This Court has subject matter jurisdiction over these claims pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; pursuant to 28 U.S.C. §§ 1367 and 1332, in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states; pursuant to 28 U.S.C. §§ 1331 and 1338 over causes of action arising under the Copyright Act; and pursuant to 28 U.S.C. §§ 1338 and 1367 over causes of action for related breach of contract claims.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391, 1400(a), in that Attachmate and MicroFocus are subject to personal jurisdiction in this District based on their substantial and regular business activities in the District. Micro Focus and Attachmate maintain offices and are registered to conduct business in the state of New York.

## FACTUAL BACKGROUND

**Transfer of Software to Bon-Ton**

8. Bon-Ton owns and operates department stores throughout the United States, including in the state of New York.

9. Micro Focus is the parent company of Attachmate. Both Attachmate and MicroFocus produce and license computer software.

10. One product licensed by Attachmate is myEXTRA! Enterprise 7.10. One product licensed by Micro Focus is Net Express version 4.0.

11. Bon-Ton has from time to time purchased licenses to use various software products from both Attachmate and Micro Focus.

12. In or about February 2006, Bon-Ton purchased certain retail store locations from Saks Incorporated ("Saks") (the "Asset Sale"). As part of the Asset Sale, Bon-Ton obtained a number of computers that were located on the premises of the purchased stores, the corporate offices and distribution centers.

13. The hard drives of these computers purchased by Bon-Ton contained copies of certain Attachmate software that, upon information and belief, were the subject of fully-paid up licenses Saks purchased from Attachmate, including copies of myEXTRA! Enterprise 7.10 software (the "Licensed Software").

14. As part of the Asset Sale, Saks transferred or assigned to Bon-Ton certain Licensed Software installed on the computers, including Attachmate software.

**Attachmate's Audit of Bon-Ton and Subsequent Payment Demands**

15. On or around February 9, 2016, Attachmate requested verification of Bon-Ton's deployments of software Bon-Ton had purchased from Attachmate.

16. Bon-Ton performed a self-audit, which involved, among other things, running certain computer scripts provided by Attachmate on Bon-Ton's computer environment to document any copies of Attachmate software that was installed on Bon-Ton's computers.

17. Bon-Ton completed the self-audit in or about March 2016 and reported the results to Attachmate.

18. On or about March 17, 2016, Attachmate sent Bon-Ton a "Comparison Table" which purported to compare the results of the self-audit with Attachmate's record of licenses owned by Bon-Ton.

19. Attachmate thereafter alleged that Bon-Ton's computers contain installations of 1,778 unlicensed copies of myExtra! Enterprise 7.10 Software. Attachmate concedes that the audit did not show any installation of any Attachmate software on a Bon-Ton server or the Bon-Ton Citrix environment.

20. Attachmate has demanded that Bon-Ton pay Attachmate over $2.5 million in so-called "compliance" license fees, which upon information and belief constitutes a per license fee that is far in excess of the value or standard purchase price of a license for myExtra! Enterprise 7.10 Software.

21. Upon information and belief, Attachmate does not own a U.S. copyright registration for the myExtra! Enterprise 7.10 software.

22. Upon information and belief, Saks purchased and owned valid and fully paid-up licenses for any Attachmate computer software that resided on the computers it sold to Bon-Ton

via the Asset Sale. Saks validly and lawfully transferred or assigned the appropriate number of licenses for any copies of the Attachmate software that were installed on the computers it transferred to Bon-Ton via the Asset Sale, including copies of Version 7.10 of the myExtra! Enterprise software. As a result of Saks' lawful transfer or assignment of software licenses to Bon-Ton via the Asset Sale, Bon-Ton owns valid licenses for all copies of the myExtra! Enterprise 7.10 software that are located on its computers.

23. Bon-Ton informed Attachmate that it disagreed with Attachmate's assessment regarding the results of the audit and that it is not required to pay Attachmate any license fees or other fees in connection with the myEXTRA! Enterprise 7.10 software revealed during the audit.

24. Any claims that could be brought by Attachmate are barred by the applicable statute of limitations, because, among other things, the computers containing copies of the software at issue were transferred or assigned to Bon-Ton via the Asset Sale that occurred nearly ten years ago.

**Purchase of Licenses from Micro Focus**

25. In or about early 2006, Bon-Ton purchased from Micro Focus 50 concurrent user licenses for the product Application Server for Net Express version 4.0 ("Net Express").

26. In addition to the concurrent user licenses, Bon-Ton also purchased one named-user license for Net Express version 4.0 from Micro Focus. This named-user license was intended for the use of a developer hired by Bon-Ton to support the Net Express application. Bon-Ton uses an independent contractor, rather than a Bon-Ton employee, as the developer providing support for this application.

27. Upon information and belief, Micro Focus was aware of the intended use of the named-user Net Express version 4.0 license.

28. Bon-Ton's use of the Net Express was in compliance with the Software License Agreement for Net Express version 4.0.

29. In or about January 2008, Bon-Ton asked Micro Focus for a price quote to upgrade Net Express from version 4.0 to version 5.0. After receiving the requested price quote, Bon-Ton declined to upgrade the Net Express software and continued to use version 4.0. Bon-Ton has not installed or used Net Express version 5.0 on any of its computers.

**Micro Focus' Audit of Bon-Ton and Subsequent Payment Demands**

30. In or about December 2015, Micro Focus requested verification of Bon-Ton's deployments of software Bon-Ton had purchased from Micro Focus.

31. Bon-Ton performed a self-audit, which involved, among other things, running certain computer scripts provided by Micro Focus on Bon-Ton's computer environment to document any copies of Micro Focus software that was installed on Bon-Ton's computers, and filling out a questionnaire.

32. Bon-Ton completed the self-audit in or about March 2016 and reported the results to Micro Focus.

33. On or about March 7, 2016, Micro-Focus sent Bon-Ton a letter disclosing what it purported were the results of the self-audit. Micro Focus does not claim that that Bon-Ton was or is using more licenses that it owns.  Instead, Micro Focus claimed that Bon-Ton's use of the Net Express version 4.0 software constituted a breach of what it claimed was the applicable end user license agreement ("EULA")—the EULA for version 5.0 of the Net Express software. Micro Focus also alleged that the named user licenses purchased for the third party developer was not permitted. Micro Focus initially claimed that it valued the license violation at $413,000

and demanded that Bon-Ton pay approximately $167,000 in license fees to remedy the alleged license discrepancy.

34. Upon information and belief, Micro Focus does not dispute that Bon-Ton's use of the Net Express Software was and is in compliance with the EULA for version 4.0 of the Net Express software.

35. Bon-Ton is not bound by the EULA for version 5.0 of Net Express because it never updated its software to version 5.0, and it used and continued to use the Net Express version 4.0 licenses within the scope of the license granted in the EULA for version 4.0 of Net Express.

36. Bon-Ton informed Micro Focus that it disagreed with Micro Focus's assessment regarding the results of the audit and that it is not required to pay Micro Focus license fees or other fees in connection with its use of the Net Express version 4.0 software.

**The Parties' Present Dispute**

37. The parties presently dispute the number and type of software licenses, if any, that Bon-Ton is required to purchase from Attachmate and Micro-Focus.

38. Attachmate contends Bon-Ton must purchase 1,778 licenses for the myEXTRA! Enterprise 7.10 software located on Bon-Ton's computers and that it should pay Attachmate over $2.5 million in "compliance" license fees. Bon-Ton is not required to purchase 1,778 licenses for the myEXTRA! Enterprise 7.10 software and has refused to do so because Bon-Ton was properly assigned or transferred the appropriate fully-paid up licenses for the Attachmate software from Saks via the Asset Sale nearly ten years ago.

39. Micro Focus contends that Bon-Ton's use of Net Express version 4.0 exceeds the scope of the EULA for version 5.0 of Net Express and that Bon-Ton must purchase a

7

different type of license as well as compensate Micro Focus for the period of time the license were being used outside the license grant. Bon-Ton disputes that its use of the Net Express software is governed by the EULA for version 5.0 of Net Express.  Bon-Ton also disputes that it violated the terms of any agreement with Micro-Focus or otherwise infringed upon any rights owned by Micro Focus.

40. On or about May 23, 2016 an attorney in Micro Focus' corporate legal department informed Bon-Ton that "commercial negotiations" between the parties were "unsuccessful" and therefore the matter had been "escalated" to her.  She represented that her client "must protect its rights" if a resolution was not reached between the parties within nine days from the date of her letter.

41. On or about August 9, 2016, Bon-Ton received a letter from an outside law firm representing Micro Focus. The letter claimed that Bon-Ton faced a potential exposure of up to $2.5 million for the alleged over-deployment of the myEXTRA! Enterprise 7.10 software and an additional $200,000 for Bon-Ton's alleged use of the Net Express licenses outside the license grant. The letter noted that Bon-Ton was "needlessly escalat[ing] what should be a routine business matter" and warned that if Bon-Ton was not interested in negotiating a compromise, Micro Focus would "consider its other options".

42. Upon information and belief, it has been Attachmate's business practice to audit its customers' computer environments and thereafter demand millions of dollars from its customers based upon an allegation of copyright infringement.  If the customer does not accede to Attachmate's demands to purchase large volumes of additional licenses at exorbitant fees that far exceed the market value or standard purchase price for the licenses, Attachmate files a lawsuit against its customer.

43. Upon information and belief, since 2005 alone Attachmate has filed at least 18 lawsuits against its software customers demanding millions of dollars in connection with claims for breach of contract and copyright infringement, alleging that an audit revealed widespread over-installation and misuse of its software products. In addition to the lawsuits filed by Attachmate, in the face of Attachmate's unreasonable demands and threats of litigation, at least 20 of Attachmate's customers have been forced to file lawsuits seeking a declaratory judgment that they did not infringe Attachmate's rights since 2007.  Upon information and belief, Micro Focus has similar business practices, and has commenced at least two lawsuits against its software customers in 2016 alone.

44. Based upon Micro Focus and Attachmate's recent statements to Bon-Ton and their established pattern of suing their customers in connection with audit disputes, Bon-Ton has a reasonable apprehension that Attachmate and Micro Focus will file suit for breach of contract and copyright infringement if Bon-Ton does not meet their demand to pay them millions of dollars.

45. An actual and substantial controversy exists of sufficient immediacy and reality to warrant the issuance of a declaratory judgment between Bon-Ton, Attachmate, and Micro Focus to resolve that: (1) Bon-Ton has not breached any software agreements and (2) Bon-Ton has not infringed upon any copyrights owned by Attachmate or Micro Focus, including any that it alleges to own in in the myEXTRA! Enterprise 7.10 or Net Express version 4.0 software.

**FIRST CAUSE OF ACTION:
DECLARATORY JUDGMENT THAT BON-TON HAS
NOT BREACHED ITS CONTRACTUAL OBLIGATIONS WITH ATTACHMATE**

46. Bon-Ton restates and realleges each of the allegations set forth in Paragraphs 1 through 45 above.

47. Bon-Ton has not breached any contractual obligations owed to Attachmate.

48. Because Bon-Ton has not breached its contractual obligations, it does not owe any amounts to Attachmate for such alleged breaches.

49. Even if Bon-Ton has any contractual obligation to Attachmate, any alleged breach is barred by the applicable statute of limitations.

50. Bon-Ton is entitled to a judgment declaring that it has not breached any contractual obligation owed to Attachmate.

**SECOND CAUSE OF ACTION:
DECLARATORY JUDGMENT THAT BON-TON HAS
NOT BREACHED ITS CONTRACTUAL OBLIGATIONS WITH MICRO FOCUS**

51. Bon-Ton restates and realleges each of the allegations set forth in Paragraphs 1 through 50 above.

52. Bon-Ton has not breached any contractual obligations owed to Micro Focus.

53. Because Bon-Ton has not breached its contractual obligations, it does not owe any amounts to Micro Focus for such alleged breaches.

54. Bon-Ton is entitled to a judgment declaring that it has not breached any contractual obligation owed to Micro Focus.

## THIRD CAUSE OF ACTION:
## DECLARATORY JUDGMENT THAT BON-TON
## HAS NOT INFRINGED ATTACHMATE'S COPYRIGHTS

55.    Bon-Ton restates and realleges each of the allegations set forth in Paragraphs 1 through 54 above.

56.    Attachmate claims to own copyrights in the myEXTRA! Enterprise 7.10 software.

57.    Bon-Ton contends that Attachmate does not own exclusive copyrights or a U.S. copyright registration for the myEXTRA! Enterprise 7.10 software.

58.    Attachmate contends that the unlicensed copying, distribution, or use of the myEXTRA! Enterprise 7.10 software constitutes copyright infringement.

59.    Attachmate contends that Bon-Ton has engaged in the unlicensed copying, distribution, and/or use of the myEXTRA! Enterprise 7.10 software.

60.    Bon-Ton has not infringed and is not infringing any valid copyright or any other right owned by Attachmate relating to any software, including the myEXTRA! Enterprise 7.10 software.

61.    Even if Bon-Ton had infringed any valid copyright owned by Attachmate, such claims are barred by the applicable statute of limitations.

62.    Bon-Ton is entitled to judgment declaring that it has not infringed and is not infringing any valid copyright owned by Attachmate relating to any software, including the myEXTRA! Enterprise 7.10 software.

NY01\CorrA\4289325.8

### **FOURTH CAUSE OF ACTION:**
### **DECLARATORY JUDGMENT THAT BON-TON**
### **HAS NOT INFRINGED MICRO FOCUS COPYRIGHTS**

63. Bon-Ton restates and realleges each of the allegations set forth in Paragraphs 1 through 62 above.

64. Micro Focus claims to own copyrights in the Net Express software version 4.0 and version 5.0.

65. Micro Focus contends that Bon-Ton has engaged in use that exceeds the scope of the license grant.

66. Upon information and belief, Micro Focus contends that exceeding the scope of the license grant constitutes copyright infringement.

67. Bon-Ton has not infringed and is not infringing any valid copyright or any other right owned by Micro Focus relating to any software, including the Net Express software versions 4.0 and 5.0.

68. Bon-Ton is entitled to judgment declaring that it has not infringed and is not infringing any valid copyright owned by Micro Focus relating to any software, including Net Express versions 4.0 and 5.0.

WHEREFORE, Plaintiff Bon-Ton seeks judgment in its favor and against Defendant Attachmate Corporation and Defendant Micro Focus (US), Inc., as follows:

    a.    Declaring that Bon-Ton has not breached any contractual obligations owed to Attachmate;

    b.    Declaring that Bon-Ton has not breached any contractual obligations owed to Micro Focus;

    c.    Declaring that Bon-Ton has not infringed any valid copyright owned by Attachmate;

    d.      Declaring that Bon-Ton has not infringed any valid copyright owned by Micro Focus;

    e.      Declaring that any alleged breaches or infringements alleged by Attachmate are barred by the applicable statute of limitations;

    f.      Awarding Bon-Ton its costs and attorneys' fees; and

    g.      Awarding such other necessary or proper relief as justice may require.

Dated:  September 19, 2016  
           New York, New York

Respectfully submitted,

By: _____

Andrea L. Calvaruso  
Ana Y. Correa  
KELLEY DRYE & WARREN LLP  
101 Park Avenue  
New York, NY 10178  
(212) 808-7800

*Attorneys for Plaintiff The Bon-Ton Stores, Inc.*